No. 25-10675-B

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

**SECURITIES AND EXCHANGE COMMISSION**,
Appellee,

v.

**JAMES A. TORCHIA,**
Appellant.

On appeal from the United States District Court
for the Northern District of Georgia
No. 1:15-cv-3904-ELR-CCB

**BRIEF OF APPELLANT
JAMES A. TORCHIA**

BRIAN MENDELSOHN
The Mendelsohn Ertel Law Group, LLC
101 Marietta Street, NW – Suite 3325
Atlanta, GA 30303
404-885-8878; F: 470-826-1755
brian@tmelg.com
Counsel for James A. Torchia

No. 25-10675-B
United States v. James A. Torchia

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Cir. R. 26.1-2(a), counsel certifies that the following have an interest in the outcome of this appeal:

Addleman, Katherine S., former attorney for Defendants/Appellant

Allen, Jo, Movant

Allen, Thomas, Movant

American Fidelity Assurance Company

American Financial and Retirement Services, LLC, Amicus

American Motor Credit, LLC, Defendant

Beck, Charles, Intervenor Plaintiff

Berman, Lee, Claimant

Bly, Christopher C., United States Magistrate Judge

Bradylyons, Morgan E. A., attorney for Plaintiff/Appellee

Broyles, Gary, Intervenor Plaintiff

Burnette, Robin Danielle, attorney for Caja Paraguaya de Juilaciones y Pensiones del Personal de Itaipu Binacional

Caja Paraguaya de Juilaciones y Pensiones del Personal de Itaipu Binacional, Movant

C-1 of 8

Carrillo, David, Movant

Chambers, Robert, Intervenor Plaintiff

Clineburg, Jr., William A., attorney for Al B. Hill

Coleman, Kelly, Objector

Coleman, Margaret

Coleman, Thomas Kelly

Coleman, Tina

Corso, Stephen L., former attorney for Defendants/Appellant

Couch, Nelda, Intervenor Plaintiff

Credit Nation Acceptance, LLC, Defendant

Credit Nation Auto Sales, LLC, Defendant

Credit Nation Capital, LLC, Defendant

Crenshaw, Bobby L., Movant

Dahlen, Charles, Intervenor Plaintiff

Dahlen, Sue, Intervenor Plaintiff

Darville, Mark, Intervenor Plaintiff

Davis, Pratt H., attorney for Kim Kruse and Daybreak Settlements, LLC

Daybreak Settlements, LLC, Georgia

Daybreak Settlements, LLC, North Carolina

Delaney, Colin Dang, attorney for Caja Paraguaya de Juilaciones y Pensiones del Personal de Itaipu Binacional

Doss, Jason R., former attorney for Defendants/Appellant

Duffey, Jr., Hon. William S., Special Master

Duscio, Antonio, Objector

Elfert, Michael J., Movant

Evans, Mary Jo, Intervenor Plaintiff

Fugitt, Jo-Ann, Intervenor Plaintiff

Gibson, Charles, Intervenor Plaintiff

Graham, Harry, Intervenor Plaintiff

Grant, Roger, Movant

Gravitt, Sonya

Gregory, James

Gregory, Shirley

Gronemeyer, Michael, Movant

Hale, Michael, Movant

Hale, Sandra, Movant

Hanemaayer, Kusum

C-3 of 8

Hatcher, Collin D., attorney for Stephanie Segarra

Heild, Charles

Hill, Al B., Receiver

Holcomb, Charlotte, Intervenor Plaintiff

Honey Investments, Ltd., Intervenor Plaintiff

Hood, Holly

Hoyer, James

Hoyer, Nancy

Ivey, Paul, Intervenor Plaintiff

Janicek, Kathryn, Intervenor Plaintiff

Johnson, James, former attorney for Defendants/Appellant

Jones, Donald, Intervenor Plaintiff

Jones, Gary, Intervenor Plaintiff

Jones, Sarah

Jones, Thomas

Jones, William, Intervenor Plaintiff

Jospin, Walter E., attorney for Plaintiff/Appellee

Kelly, Michael, attorney for Plaintiff/Appellee

Kelley, Coleman

C-4 of 8

Kelley, Tina, Objector

Kramer, Joseph, Intervenor Plaintiff

Kruse, Kim

Leonard, William Gordon, attorney for Al B. Hill

Lewis, Carlin, Movant

LG Pump, Inc., Intervenor Plaintiff

Liberty National Corporation, Movant

Lincoln National Corporation, Movant

Loewenthal, Glenn, attorney for Intervenor Plaintiff and Amicus

Loftin, John D., Movant

Loomis, Madison Graham, attorney for Plaintiff/Appellee

Mathews, Forest H., Movant

Mayes, Joshua A., attorney for Plaintiff/Appellee

McIver, Terry, Intervenor Plaintiff

McManus, John Joseph, attorney for Stephanie Segarra

Mendelsohn, Brian, attorney for Defendant/Appellant

Modern Woodmen of America, Movant

Moore, Gary, Intervenor Plaintiff

Murnahan, Kristin Wilhelm, attorney for Plaintiff/Appellee

Newman, Timothy A., former attorney for Defendants/Appellant

Ney, William Brent, attorney for Stephanie Segarra

Nunez, Louis, Intervenor Plaintiff

O'Dell, Justin B., attorney to Respondent and Objector

Orona, Frances S., Movant

Orona, Johnny H., Movant

Orr, Jr., James C., attorney for Intervenor Plaintiff and Amicus

Pinson, Judy, Movant

Professional Janitorial Services of Midland, Inc., Intervenor Plaintiff

Pyne, Dolores, Movant

Pyne, Jr., Robert, Movant

Queen, Bill

Ross, Hon. Eleanor L., United States District Judge

Rumer, William, Objector

Salgado, Javier, Intervenor Plaintiff

Sanders, Luann, Intervenor Plaintiff

Schoenmann, E. Lynn, Movant

Securities and Exchange Commission, Plaintiff/Appellee

C-6 of 8

Segarra, Stephanie, Movant

Simmers, Jackie, Intervenor Plaintiff

Slaughter, Judy, Intervenor Plaintiff

Slaughter, Larry, Intervenor Plaintiff

Spaghetti Junction, LLC, Defendant

Sutherland, Katherine, Respondent

Sutherland, Richard, Respondent

Sweet, Michael A., Objector

Synovus Bank

Torchia, James A., Defendant/Appellant

Treadaway, Bruce, Movant

Trott, Cassandra, Movant

Trott, Keith, Movant

Voya Financial, Inc., Movant

Wallace, Zane, Intervenor Plaintiff

Wasmuth, Jr., Edward H., attorney for Caja Paraguaya de Juilaciones y Pensiones del Personal de Itaipu Binacional

Weber, Amy K. Woo, attorney for Al B. Hill

Wilkins, Matthew Michael, attorney for Stephanie Segarra

Wolfe, Sharon, Movant

Wolfe, Terry, Movant


No publicly traded company or corporation has an interest in the outcome of this case or of this appeal.

> Respectfully submitted,
>
> /S/ BRIAN MENDELSOHN
> Counsel for James A. Torchia

## STATEMENT REGARDING ORAL ARGUMENT

Appellant does not seek oral argument.

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ................................................................................. C-1

STATEMENT REGARDING ORAL ARGUMENT ........................................... i

TABLE OF CITATIONS ................................................................................. iv

STATEMENT OF JURISDICTION ................................................................... 1

STATEMENT OF THE ISSUES ......................................................................... 2

STATEMENT OF THE CASE .............................................................................. 3

      A.    Course of Proceedings and Disposition Below ............................. 3

      B.    Statement of Facts .......................................................................... 5

      C.    Standard of Review ...................................................................... 12

SUMMARY OF THE ARGUMENT .................................................................. 13

ARGUMENT AND CITATION OF AUTHORITY .......................................... 15

I.     THE DISTRICT COURT ERRED BY ORDERING DISGORGEMENT AND PRETRIAL INTEREST WHEN MR. TORCHIA HAD NO PROFITS ............................................................... 15

II.    THE DISTRICT COURT ERRED BY FINDING THREE VIOLATIONS INSTEAD OF ONE AND THEREBY IMPOSED A PENALTY THAT WAS THREE TIMES HIGHER THAN WHAT WAS AUTHORIZED BY 15 U.S.C. § 77t(d)(2)(C) .................... 18

      1.    The district court erred by incorrectly defining the term "violation" as the number of statutes violated by Mr. Torchia. 19

2.    The district court abused its discretion by finding three violations based on the violation of three statutes when two of the three statutes have the same the elements and the third has the same elements with a lesser intent element. ...........................................22

CONCLUSION ..............................................................................................26

CERTIFICATE OF COMPLIANCE AND SERVICE......................................27

## TABLE OF CITATIONS

**Federal Cases**

*Aaron v. SEC*,
446 U.S. 680 (1980) ............................................................................ 25

*Compulife Software, Inc. v. Newman*,
959 F.3d 1288 (11th Cir. 2020) ........................................................ 12

*Lui v. SEC*,
591 U.S. 71 (2020) ............................................................................ 15

*Polycarpe v. E&S Landscaping Serv., Inc.*,
616 F.3d 1217 (11th Cir. 2010) ................................................... 20-21

*Richardson v. United States*,
526 U.S. 813 (1999) ......................................................................... 21

*\*SEC v. Blatt*,
538 F.2d 1325 (5th Cir. 1978) ................................................... 13, 15

*SEC v. Familant*,
910 F. Supp. 2d 83 (D.D.C. 2012) ................................................... 24

*SEC v. First Jersey Sec., Inc.*,
101 F.3d 1450 (2d Cir. 1996) .......................................................... 15

*SEC v. Johnson*,
2006 WL 2053379 (S.D.N.Y. Jul. 24, 2006) .................................. 19

*SEC v. Kokorich*,
663 F. Supp. 3d 63 (D.D.C. 2023) ................................................... 24

*SEC v. Life Partners Holdings, Inc.*,
854 F.3d 765 (5th Cir. 2017) .......................................................... 19

*SEC v. Milan Grp., Inc.,
   962 F. Supp. 2d 182 (D.D.C. 2013) .................................................. 23, 24-25

*SEC v. Monarch Funding Corp.,
   192 F.3d 295 (2d Cir. 1999) ........................................................ 23, 24

SEC v. Monterosso,
   756 F.3d 1326 (11th Cir. 2014) .................................................... 12

SEC v. Navellier & Assocs.,
   108 F.4th 19 (1st Cir. 2024) .........................................................12

SEC v. One Wall St, Inc.,
   2008 WL 5082294 (E.D.N.Y. 2008) ................................................ 19

SEC v. Pentagon Capital Mgmt. PLC,
   725 F.3d 279 (2d Cir. 2013) .......................................................... 12

SEC v. Rabinovich & Assocs., LP, No.
   2008 WL 4937360 at *6 (S.D.N.Y. Nov. 18, 2008) ......................................... 19

SEC v. Razmilovic,
   738 F.3d 14 (2d Cir. 2013) ............................................................ 15

SEC v. StratoComm Corp.,
   89 F. Supp. 3d 357 (N.D.N.Y. 2015) ............................................... 19

SEC v. Torchia,
   922 F.3d 1307 (11th Cir. 2019) ..................................................... 4

United States CFTC v. Hunter Wise Commodities, LLC,
   749 F.3d 967 (11th Cir. 2014) ................................................... 20-21

United States v. Graziano,
   710 F.2d 691 (11th Cir. 1983) ..................................................... 25

*United States v. Harvey*,
  78 F.3d 501 (11th Cir. 1996) .......................................................... 25

**Federal Statutes**

  15 U.S.C. § 77t ................................................................. 2, 11, 13, 18

  28 U.S.C. § 1291 ......................................................................... 1

**Rules**

  Fed. R. App. P. 4(a)(B)(ii) ............................................................ 1

  Fed. R. App. P. 32 ...................................................................... 27

**Other**

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 73 (2012) ..........................................................................21

Black's Law Dictionary 1570 (6th ed. 1990) ..................................... 21

*S.E.C. Release No. 6521, Adjustments to Civil Monetary Penalty Amounts*,
  2024 WL 111023 (Jan. 5, 2024) ........................................... 11, 13, 18

\*   Pursuant to 11th Cir. R. 28-1(e), Mr. Torchia notes that he primarily relies upon these citations.

No. 25-10675-B

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

SECURITIES AND EXCHANGE COMMISSION,
Appellee,

v.

JAMES A. TORCHIA,
Appellant.

## STATEMENT OF JURISDICTION

This is a direct appeal from a final order and judgment of the district court in a civil enforcement action filed by the Securities and Exchange Commission. The Court of Appeals has jurisdiction over this appeal under 28 U.S.C. § 1291. Mr. Torchia filed the notice of appeal on March 3, 2025, within 60 days of the entry of the district court's final judgment. FED. R. APP. P. 4(a)(B)(ii). The notice of appeal was timely filed as one of the parties in an agency of the United States. This appeal is from a final order of the district court that disposes of all the parties' claims in this case.

1

## STATEMENT OF THE ISSUES

**I.**     Did the district court err by ordering disgorgement and pretrial interest when Mr. Torchia had no profits?

**II.**    Did the district court err by finding three violations instead of one and thereby impose a penalty that was three times higher than what was authorized by 15 U.S.C. § 77t(d)(2)(C)?

**STATEMENT OF THE CASE**

**A.    Course of Proceedings and Disposition Below**

On November 10, 2015, the SEC initiated this civil action against Mr.

Torchia and a group of related companies owned by him. (Doc. 1). The

related companies were Credit Nation Capital, LLC, Credit Nation

Acceptance, LLC, Credit Nation Auto Sales, LLC, American Motor Credit,

LLC, Spaghetti Junction, LLC. (Doc. 1). On April 25, 2016, the District Court

granted Plaintiff's Motion for Preliminary Injunction, put Credit Nation

into receivership, and appointed Al B. Hill to be the receiver. (Doc. 66).

Subsequently, Mr. Torchia agreed to resolve this civil case with a

consent bifurcated judgment. The judgment was entered on March 17,

2017.  (Doc. 422). Without admitting or denying the allegations, Mr.

Torchia agreed to be permanently enjoined from violating securities law

and from making representations like those involved in this case. The

agreement put off determination of monetary penalties to a later date.

On August 7, 2017, the District Court approved the Receiver's claim

process plan and plan to distribute the assets of the Credit Nation

businesses. (Doc. 501). The District Court also overruled objections of

various investors to the distribution plan.  Mr. Torchia did not file any

3

objections. Several investors appealed the district court's decision. This Court decided the investors' appeal in a published opinion on April 30, 2019. *SEC v. Torchia*, 922 F.3d 1307 (11th Cir. 2019). Despite the style of the case, Mr. Torchia and the Credit Nation companies did not participate in this appeal.

On September 25, 2019, Mr. Torchia was indicted by a federal grand jury in the Northern District of Georgia and charged with conspiracy and mail fraud counts relating to Credit Nation. (*United States v. James Torchia*, NDGA Case No. 1:19-CR-377-JPB, Doc. 1). In October 2022, a jury found Mr. Torchia not guilty on all of the charges. (*United States v. James Torchia*, NDGA Case No. 1:19-CR-377-JPB, Doc. 124)

On November 9, 2023, eight years after the filing of the initial lawsuit, the SEC filed a Motion for Remedies and brief in support. (Doc. 939). In the motion, the SEC sought disgorgement, prejudgment interest, and a civil penalty. Specifically, from Mr. Torchia, the SEC requested disgorgement in the amount of $114,900.00, prejudgment interest of $47,804.18, and a civil penalty of $1,761,586. After briefing on the Motion for Remedies, the district court granted in part and denied in part. The district court order disgorgement in the amount of $114,900.00 and a civil penalty of $669,687. (Doc. 1020). It ordered the parties to confer to calculate the amount of prejudgment interest that should be ordered.

4

On January 3, 2025, the District Court entered the Final Judgment as to Defendants that included the disgorgement amount and the civil penalty. It set the amount for prejudgment interest at $28,453.54. (Doc. 1037).  Mr. Torchia timely filed his notice of appeal on March 3, 2025. (Doc. 1051).

## B.    Statement of Facts

Appellant James Torchia was the owner of several related businesses -- Credit Nation Capital, LLC, Credit Nation Acceptance, LLC, Credit Nation Auto Sales, LLC, American Motor Credit, LLC, Spaghetti Junction, LLC. Throughout this litigation, the parties and the district court have referred to this family of companies collectively as "Credit Nation." [1] Credit Nation was a business with two parts.  One side of the business focused on life settlements while the other side of the business focused on auto loans. (Doc. 66 at 5). The life settlement business involved the company purchasing life insurance policies from insured individuals for an amount less than the face value of the death benefit. (Doc. 66 at 9). Credit Nation would then take over the premium payments and collect the full death benefit on the death of the insured. The company would make a

---

[1] Appellant will continue to follow this convention. Citations to the record will be to the docket and page number in the form (Doc. ___ at ___).

5

profit if at the time of the insured's death, the cost of the policy plus the premiums payments was less than the death benefit of the policy. (Doc. 66 at 9). Credit Nation would buy and hold policies, but it would also resell some policies to investors for a price between the amount it paid for the policy and the death benefit. (Doc. 66 at 9). When selling policies, Credit Nation sometimes sold the entire policy to a single investor and sometimes fractionalized the policies, selling shares of the policies to several investors.

The second part of Credit Nation's business involved auto loans. The company would make high interest auto loans to subprime borrowers. (Doc. 66 at 8). Again, Credit Nation would either hold the loans and collect the payments or bundle the loans and sell them to other companies.

To fund these two lines of business, Credit Nation sold promissory notes to investors offering a nine percent interest rate on three- or five-year notes. (Doc. 66 at 5). The company advertised these notes in newspapers and on the radio with a claim that the notes were 100 percent asset backed. (Doc. 66 at 5). The assets backing the notes were the life insurance policies and the auto loans. Credit Nation never missed an interest payment to an investor.

6

James Torchia was the president and majority owner of the company. Mr. Torchia invested several million dollars of his own money to start Credit Nation. (Doc. 66 at 4; Doc. 970, Attachment 1, Deposition of Amberly Green, August 11, 2016, at 115; Doc. 57 at 298).  Up until November 2015, Mr. Torchia redeposited all his paychecks back into the company. (Doc. 970, Attachment 1, Green Deposition at 160). Mr. Torchia's expertise was in the buying and selling of life insurance policies.  He hired lawyer Marc Celello to be the general counsel for the companies. Mr. Celello was a securities specialist with expertise in life settlement law. (Doc. 970, Attachment 2 – Criminal Trial Testimony of Marc Celello, October 18, 2022 at 96-99). Mr. Celello was responsible for all regulatory, contractual, litigation, and compliance matters.  Mr. Celello was also responsible for drafting offering memoranda and other investment documents and for approving all advertising.

Mr. Torchia was the sole owner of an entity named Spaghetti Junction.  When Mr. Torchia needed to put money into Credit Nation, for example to pay premiums on insurance policies when there were cash flow issues, he would send the money from Spaghetti Junction. When funds were owed to Mr. Torchia by Credit Nation, for example when a policy

7

that was jointly owned by Mr. Torchia and Credit Nation matured, the money was sent to the Spaghetti Junction account.  The district court found that Mr. Torchia "loaned Credit Nation millions of dollars in start-up capital between 2008-2011" through Spaghetti Junction. (Doc. 66 at 4).

In January 2014, the SEC came knocking on the door of Credit Nation with questions about its advertising and marketing practices relating to the sale of promissory notes to investors. Immediately, Credit Nation hired Kit Adelman, a highly respected securities lawyer who was the former head of the Atlanta Regional Office of the SEC. (Doc. 970, Attachment 2, Celello Criminal Trial Testimony at 101).   Credit Nation and Mr. Celello, worked diligently with Ms. Adelman to cooperate with the investigation provide all the information and documentation requested by the SEC. (Doc. 970, Attachment 2, Celello Criminal Trial Testimony at 109).

In November 2015, the SEC initiated this civil action. The SEC alleged that the advertising claiming that the notes were 100 percent asset backed was not accurate.  It also alleged that the company failed to disclose that it was not profitable.  The SEC also asserted that Mr. Torchia was operating a Ponzi scheme by using new investor money to payoff earlier investors. Shortly after the civil action was filed, Mr. Torchia and Credit Nation

8

agreed to a consent order to preserve the status quo while the litigation proceeded. Among other things, the company agreed that it would "not advertise, offer or sell any additional promissory notes, and any outstanding notes shall not automatically renew." (Doc. 17 at 4). It agreed not to sell fractionalized life insurance policies and not to transfer assets between entities. (Doc. 17 at 5, 7). In other words, there would be no transfers to or from Spaghetti Junction. Credit Nation was authorized to pay salaries, including Mr. Torchia's.

On April 25, 2016, the Court granted Plaintiff's Motion for Preliminary Injunction, put Credit Nation into receivership, and appointed Al B. Hill to be the receiver. Mr. Hill quickly shuttered the business and set about selling off assets. To date, Mr. Hill has collected approximately 18 million dollars.

Subsequently, Mr. Torchia agree to resolve this civil case with a consent bifurcated judgment. The judgement was entered on March 17, 2017. (Doc. 422). Without admitting or denying the allegations, Mr. Torchia agreed to be permanently enjoined from violating securities law

9

and from making representations like those involved in this case. The agreement put off determination of monetary penalties to a later date.[2]

In 2019, Mr. Torchia was indicted by a federal grand jury in the Northern District of Georgia and charged with conspiracy and mail fraud counts relating to Credit Nation. Mr. Torchia went to trial on this case in October 2022. At the trial, Mr. Torchia presented unrefuted evidence that the value of the policies and the auto loans exceeded the amount owed on the promissory notes.  In other words, that the assets were in fact one hundred percent asset backed.  The jury found Mr. Torchia not guilty on all of the charges.

Eight years to the day after filing the civil action, the SEC filed a motion for civil penalties, entitled Motion for Remedies. (Doc. 939). In its Motion for Remedies and brief in support, Plaintiff sought disgorgement,

---

[2] For purposes of determination of civil penalties, Mr. Torchia agreed in the consent bifurcated judgement that the allegations of the Complaint shall be accepted as and deemed true by the court. (Doc. 422 at 5).  The consent bifurcated judgement also allowed the Court to decide the issue "on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure." (Doc. 422 at 5).  The parties agreed that they and the district court could rely on sworn testimony from Mr. Torchia's criminal trial as well.

prejudgment interest, and a civil penalty. Specifically, from Mr. Torchia, the SEC requested disgorgement in the amount of $114,900.00, prejudgment interest of $47,804.18, and a civil penalty of $1,761,586.

The district court ordered disgorgement in the amount requested by the SEC, but reduced the prejudgment interest because of undue delay in the entry of the judgment. As for the civil penalty, the district court ordered a penalty of $669,687 based on a finding of three violations.

Section 20(d) of the Securities Act says that the district court may order a civil penalty not to exceed the greater of $223,229 per violation or the gross pecuniary gain. 15 U.S.C. § 77t(d)(2)(C); S.E.C. Release No. 6521, Adjustments to Civil Monetary Penalty Amounts, 2024 WL 111023, at *2 (Jan. 5, 2024). In the district court, the SEC sought a penalty of $1,761,586 alleging that this was the gross pecuniary gain amount. (Doc.939-1 at 23-24). Mr. Torchia disputed this amount and argued that he had no pecuniary gain. The district court found a significant flaw in the loss calculation relied upon by the Government and as a result, further found that "gross pecuniary gain is simply not an appropriate or reliable measure for the penalty in this case." (Doc. 1020 at 21).

11

Because it relied solely on gross pecuniary loss as its amount for the civil penalty, the SEC did not make any argument about a penalty based on each violation. Mr. Torchia argued that there was only one violation and any civil penalty should be capped at the statutory amount for one violation. The district court found three violations. It determined that there should be one violation for each statute violated. (Doc. 1020 at 26). It found three statutory violations and imposed a penalty of $223,229 per violation.

## C.    Standard of Review

This Court reviews the district court's conclusions of law de novo and findings of fact for clear error. *Compulife Software, Inc. v. Newman*, 959 F.3d 1288, 1301 (11th Cir. 2020).

This Court reviews "a district judge's findings regarding the amount of ill-gotten gains to be disgorged for abuse of discretion." *SEC v. Monterosso*, 756 F.3d 1326, 1337 (11th Cir. 2014). Similarly, "whether the district court . . . properly tailored the scope of the disgorgement order to address the wrongdoer's conduct" is also reviewed for abuse of discretion. *SEC v. Navellier & Assocs.*, 108 F.4th 19, 42 (1st Cir. 2024)).

The district court's imposition of a civil penalty is reviewed for abuse of discretion. *SEC v. Pentagon Capital Mgmt. PLC*, 725 F.3d 279, 287 (2d Cir. 2013).

## SUMMARY OF THE ARGUMENT

While a district court is authorized to order disgorgement, the amount of the disgorgement is measured by the profits gained from the wrongdoing. *SEC v. Blatt*, 538 F.2d 1325, 1335 (5th Cir. 1978). The remedy is remedial, not punitive. When Credit Nation went into receivership, Mr. Torchia lost close to three million dollars that he put into Credit Nation. The district court did not account for these losses when it ordered disgorgement in the amount of $114,900. Since Mr. Torchia had no profits, the district court was not authorized to order disgorgement. With no profits to disgorge, there can be no pretrial interest.

Section 20(d) of the Securities Act allows the district court to order a civil penalty not to exceed the greater of $223,229 per violation or the gross pecuniary gain from the violation. 15 U.S.C. § 77t(d); S.E.C. Release No. 6521, Adjustments to Civil Monetary Penalty Amounts, 2024 WL 111023, at *2 (Jan. 5, 2024). Unable to reliably calculate whether there was any pecuniary gain, the district court assessed a penalty based on the number of violations. The statute does not define the term "violation." The district court erred by failing to conduct an analysis of the ordinary meaning of the

13

term when it determined that each statute violated constituted a separate violation.

The district court also abused its discretion when it found three violations based on three separate statutes. Two of the three statutes have essentially the same elements. The third statute has the same elements only with a lesser intent requirement. The SEC's complaint relied on the same facts to support each statutory violation, as did the district court in its preliminary injunction order.

## ARGUMENT AND CITATION OF AUTHORITY

I.   **THE DISTRICT COURT ERRED BY ORDERING DISGORGEMENT AND PRETRIAL INTEREST WHEN MR. TORCHIA HAD NO PROFITS**

District courts enjoy "broad equitable power to fashion appropriate remedies" for federal securities law violations, "including ordering that culpable defendants disgorge their profits." *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1474 (2d Cir. 1996). "The amount of disgorgement ordered need only be a reasonable approximation of profits causally connected to the violation." *SEC v. Razmilovic*, 738 F.3d 14, 31 (2d Cir. 2013) (quoting SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1475 (2d Cir. 1996)). Because disgorgement is remedial and not punitive, the Court's power to order disgorgement "extends only to the amount with interest by which the defendant profited from his wrongdoing." *SEC v. Blatt*, 538 F.2d 1325, 1335 (5th Cir. 1978); *Lui v. SEC*, 591 U.S. 71, 91-92 (2020).  Because Mr. Torchia had no profits from the wrongdoing in this case, the district court erred when it ordered disgorgement and pretrial interest.

The district court based its disgorgement amount decision on a framework that was proposed by the SEC. (Doc. 1020 at 9-10).  The SEC asserted that in 2015, Credit Nation raised $18,052,814 from investors.  The

receiver recovered $17,937,914.  Holding Mr. Torchia jointly and severally liable with the Credit Nation entities, the SEC argued that the difference between the amount raised and the amount recovered would be the disgorgement amount.  The difference between these two figures was is $114,900.00. In line with this framework, the district court ordered Mr. Torchia to disgorge this amount.  (Doc. 1020 at 9).

The problem with this framework is that it fails to account for Mr. Torchia's personal losses.  After an evidentiary hearing, the district court found that Mr. Torchia "loaned Credit Nation millions of dollars in start-up capital between 2008 and 2011." (Doc. 66 at 4).  Credit Nation maintained an accounting of the moneys that Mr. Torchia loaned to Credit Nation and the amounts that were paid back to him.  At the time of the receivership, Mr. Torchia was owed $2.96 million dollars by Credit Nation. (Doc. 52 at 19).[3] When Credit Nation went into receivership, Mr. Torchia lost that money.  Because the district court failed to account for Mr. Torchia's actual losses, it erred in finding that there was $114,900.00 in

---

[3] The printed page number on the transcript is 310.

profit to disgorge.  As Mr. Torchia had no profits, disgorgement is not allowed.

Second, according to the Receiver's tables attached to the SEC's Motion for Remedies, in 2013, 2014, and 2015, Mr. Torchia put $95,159 more into the company than he took out of the company. (Doc. 939, Attachment 3 at 1). This money was not deducted from the disgorgement amount.  In other words, the disgorgement amount of $114,900, is divorced from any measure of actual profits that accrued to Mr. Torchia from any wrongdoing.[4]  Since Mr. Torchia did not profit from the wrongdoing the Court abused its discretion by ordering the disgorgement.

Because there are no profits to disgorge, there is no amount on which Mr. Torchia owes prejudgment interest.  As a result, the district court erred in requiring Mr. Torchia to pay pretrial interest.

---

[4] Addressing the civil penalty, the district court found that it was unable to determine whether Mr. Torchia had any pecuniary gain as a result of the wrongdoing and as a result declined to use gross pecuniary gain as the measure for the civil penalty. (Doc. 1020 at 21).

## II. THE DISTRICT COURT ERRED BY FINDING THREE VIOLATIONS INSTEAD OF ONE AND THEREBY IMPOSED A PENALTY THAT WAS THREE TIMES HIGHER THAN WHAT WAS AUTHORIZED BY 15 U.S.C. § 77t(d)(2)(C)

Section 20(d) of the Securities Act allows the district court to order a civil penalty not to exceed the greater of $223,229 per violation or the gross pecuniary gain from the violation. 15 U.S.C. § 77t(d); S.E.C. Release No. 6521, Adjustments to Civil Monetary Penalty Amounts, 2024 WL 111023, at *2 (Jan. 5, 2024).  In this case, the district court found that the available gain/loss figures could not provide an accurate or reliable measure of gross pecuniary gain. (Doc. 1020 at 21).  In addition, there was a real question about whether Mr. Torchia even had any pecuniary gain.  As a result, it determined the civil penalty based on the statutory penalty allowed per violation. Appellant has no issue with the district court's rejection of the gross pecuniary gain option. The question presented here is whether the district court erred when it found three violations.  In the court below, Mr. Torchia argued that there was only one violation and that equitable reasons suggested a civil penalty below the maximum allowed per violation. (Doc. 1020 at 23). The SEC failed to make any argument on the number of violations or the amount of penalty if it was not based on the gross pecuniary gain measure. (Doc. 1020 at 26).

The penalty provisions of Section 20(d) cap the amount that can be imposed by a district court for each "violation."  The problem, as the district court correctly noted, is that the statute does not define the term

18

"violation." (Doc. 1020 at 22); *SEC v. Life Partners Holdings, Inc.*, 854 F.3d 765, 783 (5th Cir. 2017). As a result, district courts have created disparate ways to determine what constitutes a violation that vary from case to case and judge to judge. *See e.g. SEC v. StratoComm Corp.*, 89 F. Supp. 3d 357, 372 (N.D.N.Y. 2015) (Noting some courts "look to the number of investors defrauded or the number of fraudulent transactions," while others "consider the number of statutes . . . violated." (citations omitted)); *SEC v. Johnson*, 2006 WL 2053379, at *10 (S.D.N.Y. Jul. 24, 2006) (assessing penalty for each statutory violation found by jury); *SEC v. Rabinovich & Assocs., LP*, No. 2008 WL 4937360 at *6 (S.D.N.Y. Nov. 18, 2008) (finding one violation where defendant's conduct was part of "a single scheme or plan"); *SEC v. One Wall St, Inc.*, 2008 WL 5082294, at *9 (E.D.N.Y. 2008)(imposing a civil penalty equal to the disgorgement amount).

This lack of guidance leads to a problem in the district courts: arbitrariness and lack of notice. With no set way to determine what is a violation, district courts can by-pass the statutory per violation cap on the penalty and impose any penalty based on any method it desires to use to determine the number of violations. In other words, district courts are able to manipulate the civil penalty amount by using one method or another to determine the number of violations.

> **1.    The district court erred by incorrectly defining the term "violation" as the number of statutes violated by Mr. Torchia.**

With no definition in the statute for the term "violation," the district court decided that the term meant the number of statutes that were

19

violated by Mr. Torchia's conduct.  The district court explained its decision as follows:

> As noted above, the SEC does not offer an opinion in its reply brief regarding how many violations occurred. I do not have sufficient information to determine the number of investors defrauded nor the number of fraudulent transactions, *see Arias*, 2021 WL 7908041, at *9, nor do I think those large numbers would result in an appropriate penalty in this case. Rather, as other courts have done, *see id.*, I think it is appropriate here to determine the number of violations by the number of statutes violated. The complaint charges three substantive counts (one more was dismissed, which I do not include). I agree with Torchia that it does not make sense to include the three aiding and abetting counts, all of which relate to one of the three substantive counts. But I will count each of the three substantive counts as one separate violation—treating them as just one because the facts supporting them are similar, as Torchia suggests, would not result in a penalty that sufficiently accounts for the egregious nature of his conduct.

(Doc. 1020 at 26).  The district court's determination of the definition of violation was erroneous and did not comport with the rules of statutory construction followed by this court.

This Court has explained that "[w]hen interpreting a statute and confronted with undefined terms, we give those terms their plain and ordinary meaning 'because we assume that Congress uses words in a statute as they are commonly understood.'" *United States CFTC v. Hunter Wise Commodities, LLC*, 749 F.3d 967, 976 (11th Cir. 2014) quoting *Polycarpe*

20

*v. E&S Landscaping Serv., Inc.*, 616 F.3d 1217, 1223 (11th Cir. 2010). "And when the law is the subject, ordinary legal meaning is to be expected . . . ." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 73 (2012).  The district court did not discuss the ordinary meaning of the term or do any statutory construction.  Instead, it noted other ways that other courts had defined the term and picked one of those ways to use. (Doc. 1020 at 22).

The Supreme Court has explained that "[a] 'violation' is not simply an act or conduct; it is an act or conduct that is contrary to law." *Richardson v. United States*, 526 U.S. 813, 818 (1999) citing Black's Law Dictionary 1570 (6th ed. 1990). By determining that each statute listed in the counts of the complaint constitutes a violation, the district court ignored the ordinary meaning of "violation" as explained in *Richardson.* The district court acknowledged that the act or conduct of Mr. Torchia was the same for each count.  (Doc. 1020 at 26). By focusing on the number of statutes rather than the conduct violating the statutes, the district court did not give the term violation its ordinary meaning.  Since the conduct that violated all three of the statutes was the same, using the ordinary meaning of the term, there was only one violation.

21

The district court wrote that finding one violation because the conduct was the same was not appropriate because "it would not result in a penalty that sufficiently accounts for the egregious nature of his conduct." (Doc. 1020 at 26).  The lack of a definition for the term "violation" can lead even well-meaning judges to stray and land on arbitrary numbers that have no basis in fact or law.

> **2.   The district court abused its discretion by finding three violations based on the violation of three statutes when two of the three statutes have the same the elements and the third has the same elements with a lesser intent element.**

Here the district court decided that the number of violations should be based on the number of statutes violated.  The complaint lists eight counts based on the violation of four statutes. The SEC dismissed two of the counts leaving six counts based on three different statutes. (Doc. 524). Each count is based on the same set of facts that are "realleged and reincorporated" by reference into each count. (Doc 1 at 28-30). The following table charts the violations listed in the complaint.

| Complaint Count | Allegation | Statute/Rule violated |
|---|---|---|
| I | Fraud | Section 17(a)(1) of the Securities Act |
| II | Fraud | Sections 17(a)(2) and 17(a)(3) of the Securities Act |
| III | Fraud | Section 10(b) of the Exchange Act and Sections (a), (b), and (c) of Rule 10b-5 |

| IV (Dismissed) | Unregistered Offering Securities | Sections 5(a) and 5(c) of the Securities Act |
|---|---|---|
| V | Aiding, Abetting, and Causing **Count I** | |
| VI | Aiding, Abetting, and Causing **Count II** | |
| VII | Aiding, Abetting, and Causing **Count III** | |
| VIII (Dismissed) | Aiding, Abetting, and Causing **Count IV** | |

The district court found statutory violations as listed in the first three counts of the complaint.[5] This was an abuse of discretion because the statutory violations had the same elements and were based on the same conduct.

"Sections 17(a)(1) and 10(b) and Rule 10b-5 essentially have the same elements." *SEC v. Milan Grp., Inc.*, 962 F. Supp. 2d 182, 191 (D.D.C. 2013), *aff'd in part, vacated in part on other grounds*, 595 F. App'x 2 (D.C. Cir. 2015)(unpublished); *see also SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999). To make out violations of these provisions, the SEC must show that a defendant "'(1) made a material misrepresentation or a material

---

[5] The district court did not count the dismissed counts as violations and found that the aiding and abetting allegations were subsumed by the substantive allegations.

23

omission as to which he had a duty to speak, or used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities.'" *SEC v. Familant*, 910 F. Supp. 2d 83, 92 (D.D.C. 2012) (quoting *Monarch Funding Corp.*, 192 F.3d at 308). Similarly, "Sections 17(a)(2) and (a)(3) require [the] SEC to show essentially the same elements, with one exception: they do not require a showing of scienter." *Milan Grp.*, 962 F. Supp. 2d at 191. "Instead, proof of negligence is sufficient to establish a violation of these provisions." *Id.* (cleaned up and quotations omitted). *SEC v. Kokorich*, 663 F. Supp. 3d 63, 76 (D.D.C. 2023).

The district court recognized the statutory overlap of the statutes listed in the complaint in a previous order. (Doc. 66 at 36-37). In fact, in its order granting the preliminary injunction and placing Credit Nation into receivership, the district court treated the three statutes as one. The court referred to them collectively as the "Anti-Fraud Provisions" and determined that the elements were essentially the same as described above. (Doc. 66 at 48). In addition, the district court considered the same facts to find that the SEC had made out a prima face case. (Doc. 66 at 48-63).

With this statutory interplay, the statutes listed in Counts I and III rely on the same facts and essentially the elements. *Milan Grp.*, 962 F. Supp.

24

2d at 191.  It is arbitrary and an abuse of discretion to find these to be two separate violations based on the violation of separate statutes. The statute listed in Count II is a lesser included violation of Counts I and III since it requires the same elements with just a without the scienter element. *Aaron v. SEC*, 446 U.S. 680 (1980). The district court described this negligence standard "as a lesser burden" (Doc. 66 at 63 n. 36).

In the criminal context, to avoid a double jeopardy issue, a person cannot be convicted and sentenced on both the greater and lesser included offense. *See United States v. Graziano*, 710 F.2d 691, 699 (11th Cir. 1983); *United States v. Harvey*, 78 F.3d 501, 504 (11th Cir. 1996). Here, the civil penalty based the number of statutes violated did just that.  It imposed a penalty for the greater violation and the lesser included violation that required a lesser intent. This was an abuse of discretion.  Since these statutory violations as alleged in the complaint are the same thing simply with different statutory labels, the district court abused its discretion by assessing a civil penalty based on the number of statutes violated for three violations instead of one.

## CONCLUSION

As there was only one violation rather than three, this Court should vacate the civil penalty imposed by the district court and remand with instructions to impose a civil penalty that is no more than the statutorily allowed amount of $229,000 for the single violation.

*/s/ Brian Mendelsohn*
BRIAN MENDELSOHN
Counsel for James A. Torchia

## CERTIFICATE OF COMPLIANCE AND SERVICE

This is to certify that the foregoing brief is in compliance with Federal Rule of Appellate Procedure 32(a)(5), (6) because it has been prepared in Book Antiqua 14 point, a proportionally-spaced typeface, using the Microsoft Word 365 word processing software. Moreover, this brief also complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it includes no more than 5,136 words, according to the same software. Finally, on the date set forth below, counsel uploaded this brief to the Court's website, which promptly served opposing counsel:

> MADISON GRAHAM LOOMIS
> U.S. Securities and Exchange Commission
> 950 East Paces Ferry Road – Ste. 900
> Atlanta, Georgia 30326-1382
>
> MICHAEL KELLY
> MORGAN E. A. BRADYLYONS
> U.S. Securities and Exchange Commission
> 100 F Street, NE – Mail Stop 9040
> Washington, DC 20549

June 13, 2025.

> /S/ BRIAN MENDELSOHN
> BRIAN MENDELSOHN
> The Mendelsohn Ertel Law Group, LLC
> 101 Marietta Street, NW – Suite 3325
> Atlanta, Georgia 30303
> 404-885-8878; F: 470-826-1755
> brian@tmelg.com
> Counsel for James A. Torchia

27